CHIEF JUSTICE WILLIAMS
delivered the opinion op the court.
James Perry by his last will, in the year 1828, devised his lands to his wife for life, and remainder to his children. Sally Lindsay, one of the testator’s daughters, died but a few months before her mother, leaving three minor children surviving her.
John S. Lindsay, the surviving husband, having bought out the other devisees — the brothers and sisters of his deceased wife — sold the laud to appellants, Moore and Williams, who sold it to appellant Parish.
Mrs. Calvert, one of Mrs. Lindsay’s children, had arrived at full age more than three years before this suit by all the children was brought to recover the interest of their deceased mother in the land and rents for its use, but tbe other two, Sally and John Lindsay, were still minors.
*358 As the tenant for life survived the devisee in remainder, Mr. Lindsay, her husband, could not be tenant by the curtesy, because the seizin was in the life-tenant and not the husband of the devisee in remainder.
'Were the children and heirs of Mrs. Lindsay barred because the suit was not brought within three years after the oldest child arrived at full age ?
By section 3, article 1, chapter 63, 2 Stanton’s Revised Statutes, 123, it is enacted that “if at the time the right of any person to bring an action for the recovery of real property first accrued such person was an infant, married woman, or of unsound mind, then such person, or the persons claiming through him, may, notwithstanding the period of fifteen years has expired, bring the action within three years after the time at which the person to whom the right first accrued ceased to be under such disability as existed when the same accrued, or died, which ever has happened first.”
This suit was brought more than fifteen and less thirty years after the death of Mrs. Lindsay or the sale of the land by the surviving husband.
The language of the Revised Statutes is nearly identical with the 3d section of the act of 1796 (2 Statute Laws by Morehead & Brown, 1127), and it is to the same precise legal effect, save that therein ten years after the removal of disabilities were allowed, which, however, was reduced to three years by the subsequent act of 1814 (same book, 1145).
By a long line of adjudication it was determined, under said act of 1796, that where the right of entry descended to heirs who were all within the exception, they had the time allowed after the disabilities were removed from all to begin their action; in other words, if at the death of the ancestor all his heirs were under disabilities, they *359 would, have the time allowed after the removal of such disabilities from all to make their entry or bring their suit. But if one of the heirs labored under no disability at the ancestor’s death, the disability of the other heirs did not prevent the statute from running, nor. bring any of them within its saving. And this principle pertained alike to joint-tenants and coparceners. It was determined that there was an essential difference between this and the English statute; the exception of the latter referring to the time when the right first accrued, even to the ancestor, while the saving in ours relates to the time when the right accrues to those laboring under the mentioned disabilities, and not to the time when the right first accrued to those under or through whom they claimed. (Clay’s heirs v. Miller, 3 Mon. 147-8; Robertson v. Smith’s heirs, Litt. Sel. Cases, 299; Roberts’s heirs v. Ridgeway, ibid. 394; McIntire’s heirs v. Funk’s heirs, 5 Litt. 37; Machir v. May, 4 Bibb, 44; Sentney v. Overton, ibid. 446.) As all these appellees were coparceners, and alike under disability when their right accrued, they all fall within the saving of the statute until such disability is removed from all, unless we adopt a different rule of construction for the Revised Statutes than the one applied to the statute of 1796, which we think should not be done, especially as its construction had been So well settled by adjudication, and which, had it been disapproved, would have found an explicit condemnation in the revision, by unequivocal language, providing definitely that the saving should only operate until the disabilities should be removed from some one of the joint-tenants or coparceners.
The next question is as to the right of recovery, and whether the amount recovered for the annual use should bear interest.
By section 3, article 2, chapter 56, 2 Stanton’s Revised *360 Statutes, 92, it is provided that “ rent after it is due shall carry interest like other liabilities originating in contract.” This statute was intended to 'secure interest on rents originating in contract, express or implied, and not to the recovery in suits for the land itself, and in'which damages for its detention could also be recovered, under section —, Civil Code.
By the common law the owner had first to establish his right of recovery by a judgment, and then by another action for mesne profits go for the value of its use and occupation; but the Civil Code has so far altered this rule as to allow a recovery in the same suit both for the land and its use, but has made no other innovation upon the ancient rule, nor does it compel the plaintiff to do so, but merely permits this.
"We know of no rule which allows, as matter of law, interest on unliquidated damages for the use of the land in contest. The claimants in possession are in no legal sense renters, but when holding even under an honest claim against the rightful owner they are responsible for use and occupation, and entitled to compensation for lasting and valuable improvements which have ameliorated the land.
Because a large amount of interest was allowed these judgments are reversed, with directions for further proceedings consistent herewith.